Next case, Greene Welding and Hardware v. Workers' Compensation Commission, 4090144. Counsel, please. Good morning. Robert Doherty appearing on behalf of Plaintiff Appellant Greene Welding. This is a case where there are really two issues involved. The question is whether or not penalties should be awarded based on the failure to pay the statutory benefits as a result of the amputation immediately. The real question in this case is whether or not the Lester case specifically set forth a clear basis and rationale that can be followed to determine exactly what immediately means. Now, immediately, you may say, well, you're just parsing terms. Immediately means immediately. But if you look back at the Lester decision, the Lester decision was based upon the fact of not awarding penalties, I'm sorry, not awarding the statutory benefits, not paying the statutory benefits until there was an award that had been made. That was the key question. That's what they held. They held that they did not have to wait until the quote-unquote award before you have to start paying benefits. In an amputation situation, there's no question that this gentleman suffered a loss of an amputation. He suffered a loss of two fingers. That's undisputed. The fact of the matter is that subsequent to his amputation, while he received a light-duty release immediately, there is clear testimony in the record that indicates, and it was stipulated by the parties, that for approximately the first month, he would go and come as he would please. When he was capable of working, he would work. When he had an upset stomach, when he had other reasons, he wouldn't come in and work. He finally got to the point where he's authorized off of work on January 9th for a week. He comes back January 15th and works for two weeks. He himself at that point says, I can't work anymore. I'm done. Yet he's still actively treating. Well, what's the purpose for paying the statutory amputation benefits? Even if he continues to work, does Lester carve out an exception for somebody continuing to work? Lester doesn't specifically set forth when the benefits begin to accrue. That's the question. When's the triggering event? Well, it says we find that the legislature intended, I'm quoting from Lester, we find that the legislature intended that individuals who receive amputation would be immediately compensated when no dispute exists as to whether the injury arose other than the course of employment, which there was no dispute here. So if it says immediately compensated, there's no other qualifying language, why doesn't that simply mean immediate, now, present? That's the point that we're trying to make. Because if you look at it, if they go back and they reinstate the commission's award and they say they are going to award penalties on the benefits that have accrued, they don't say immediately would seem to indicate, like you say, as we point out in our brief, from the date of the accident, you immediately have to pay temporary disability benefits and you immediately have to pay statutory amputation benefits. If that was their ruling, it would be very clear. The penalties awarded would not have had to wait until the accrual date. Well, I mean, when there's an amputation, what's the accrual date, if not the date of the amputation? That's the point. Look at the award in Lester. I'm sorry. If you look at the award in Lester, they don't award penalties from the date of the amputation, from the date of the accident. That's why I went through and did the mathematical calculations. It's not there. They awarded penalties based on, if you would have calculated the penalties based on the date of the accident in Lester, 504 days had passed from the date of the accident to the date that the respondent in Lester paid benefits. All right? That's 72 weeks of benefits. But if you look at the award that's reinstated by the appellate court, it reinstates the commission's award. They only award penalties for approximately 66 and two-sevenths days. That's the confusion. That's why it doesn't make any sense. If it is accrual from the date of the accident, it's simple. You will work 72 weeks of benefits. It's that simple. But that's not what they held in Lester. Further adding to the confusion, the testimony in the record indicates that he was returned from the date that he returned to work only 443 days had passed. Now, if I missed that. All those days that he came back to work, he was still missing those particular parts of his hand, wasn't he? Yes, sir. No question. But he is coming back to work and he works one day, he's off one day. He works two days, he leaves a couple of hours early. There's not any real testimony in the record because it wasn't in dispute. That first period of time he's working, there was no dispute about benefits. Basically, if he missed time, he would be receiving temporary partial. He's authorized off of work January 9th. He's off of work until January 15th. There's the week. Then he goes back to work January 16th. He works light duty for two weeks. He's still actively treated. Can I ask you a question? Yes, sir. An amputation is a scheduled benefit, isn't it? That's correct. And your compensation is based however they come up with so many weeks of compensation. Correct. What relevance is it whether he's going back, yin-yanging work, anything at all? When that finger is cut off, do you know how much he's entitled to at that point? Yes. Obviously, with the only exception being if we're depending on how far down the digit is. You can cut a check right then, basically. You could. Right. Yes. And why not? Because in this case, the law does not require it. Because the law, the interpretation, Lester, which counsel, the lead case, does not adequately explain that. Then if you take it to the next level, the commission renders a decision saying, we waited 80 days, 81 days to pay this gentleman benefits. And they cite Lester. And I understand they cite Lester. But just to finish on Lester, then they come back and they say, in further support of our decision, we cite Lyerly. Now, the commission was questioning me at the oral argument and said, well, you don't have a case to this effect. And I said, but then they give you Lyerly. And Lyerly specifically states that in that case, applying Lester and applying the rationale in Lester, and that decision was affirmed by the commission, it says that when they only fail to pay benefits for approximately 60 days, that there are no penalties. And if you look at the Lyerly decision, the arbitrator's decision says, petitioner was paid temporary disability in a timely manner. That's an important determination in her analysis, in the arbitrator's analysis that's affirmed by the commission. The next thing, petitioner continued to treat and follow up a year, for a year. I believe, Justice, that answers your question, why is that significant? It was significant in Lyerly. That was a factor that she interpreted in her decision. There was also a question about the timeliness, when a petition for penalties was filed. And finally, she said, applying the rationale. I look at these other cases that awarded penalties. One, Lester, 14 months. The other ones, 34 months, 40 months, 50 months, 60 months. That's the delay she's talking about. That's the controlling law. That's the interpretation of Lester at the commission level, and then we are told. Even if we were to acquiesce to your argument that Lester is not perfectly clear as to when the benefit has to be paid, and I suggest that's a big if, but even if we acquiesced in that argument, you still have another problem. This case is before us on the manifest weight of the evidence standard. So we would have to find that the commission's finding that the respondent failed to pay the bills in a timely manner was still against the manifest weight of the evidence. Isn't that still where this case ultimately comes out? That's correct. But if you look at the case that they cite, which says 60 days, apparently is acceptable. A 60-day delay for them is acceptable. What was the nature of the benefit in Lyerle? An amputation. Same thing. If 60 days is an acceptable grace period. It doesn't say if it's 60 days from the return to work or 60 days from the accident. In Lyerle, the individual is only off of work for one and five-sevenths weeks. Here, this gentleman finally returns to work. Even the petition for penalties initially filed cites the date of January 16th. That should be the time when they should start paying benefits. The check was cut February 27th. What happened on the date when you said the payment should be made? What happened? I didn't say the payment was made. The payment was made February 27th of 2006. I'm sorry. Yeah, 2006. In other words, he was released to return to work January 16th, 2006. I just can't get through my head what difference it makes whether he was returned to go to work. The question is, did he lose these particular benefits? Absolutely. That's absolutely the correct question. The fact is, though, the legislature, when they drafted this legislation in amputation, they didn't say it shall be paid immediately. They didn't say it shall be paid concurrently with temporary total disability. They didn't do that. Had they done that, this would be easy. But they didn't. That leaves us to apply the interpretation of the law that we have. We have Lester, and then we have the commission applying Lester. The commission gives the case that says it's only 60 days or approximately 60 days. It could be a little bit more. It could be a little bit less. But do we know if it's from the date of the return to work or is it from the date of the accident? We don't know. I don't know how an employer couldn't know. Couldn't know. Couldn't know that they lost the right ring finger, lost 50 percent of the middle finger. How they wouldn't know. Sir, I'm not saying the employer couldn't know. What I'm saying is the law and the interpretation of the law that we are confronted with, the legislature didn't make it clear. When the legislature doesn't make it clear, it's subject to interpretation by the case law. And when we have different interpretation of the case law of when it is there, how can you penalize the respondent? How can you say the respondent's conduct was unreasonable and vexatious if there is different interpretations? That's the point. To get back to your question, the manifest way to the evidence, is it possible that any person can come to a clearly opposite result? We wouldn't be here today if we didn't think that no other person could come to that result simply because the liarly case cited by them, says 60 days, approximately 60 days, is acceptable. We are at the worst case. You're at 80 days from the date of the accident, at the worst case. Well, if 60 days is acceptable, why wasn't it paid within 60 days? Why wait beyond that? But we don't know if it's 60 days from the date that he returned to work or 60 days from the date of the accident. The other cases that they're applying in the rationale that the arbitrator, which was adopted in liarly, talks about 14 months in Leicester. The penalties awarded in Leicester, 14 months, is not the time period within which the respondent paid the benefits in Leicester. They actually paid the benefits 16 months after the date of the accident. So it would appear, by implication, to mean that it's 14 months from the date of the return to work. When did the respondent pay the benefits? Did they wait until... February 27, 2006. Did they wait until the claimant, in this case, had hired an attorney? That's a great question. That's not in the evidence. Thank you, because that was one of the issues in Leicester. And my question to you was going to be, Leicester clearly held that where the employee waited to pay statutory benefits until after the claimant had hired an attorney was unreasonable and vexatious. But the testimony in the record, counsel asked his client, did you not have these benefits paid until you hired me? I objected. That was sustained. There's never any testimony in the record to this effect. So the commission issued that. The commission said that in the ruling, but that's not in the record. Can I ask a question? Yes, sir. This award was entered by the arbitrator on... The arbitrator's decision was issued on February 2, 2007? Yes, sir. Is that it? February 2, 2007? How much had you paid to the petitioner in statutory benefits for the amputation as of February 2, 2007? I believe that all statutory benefits had been paid. They had all accrued from that time. February 27th of... Well, they calculated the penalty in this case based on the amount he was entitled to on the date you made the first payment. Correct. Is that not correct? Eleven and some odd portion of some weeks? That's correct. But, of course, that's not what 19K says, is it? 19K says that the penalty payable under the act will be equal to 50% of the amount payable at the time of the award. How much was payable at the time of the award? The entire amount could have been payable at the time of the award. It was already paid? Correct. So there was nothing payable at the time of the award, was there? No, sir. Thank you, counsel. Do we have time on rebuttal? Thank you. If I may, on rebuttal, I will comment about the medical bills. May it please the Court. My name is Tom Lichten. I represent Mr. Kennard in this case. How about the calculation in reference to 19K? I have to admit, Your Honor, that that particular point that you just raised had not occurred to me previously. However, I think that the – Of course, it wasn't argued by your opponent, either, was it? That's absolutely correct. It was not. It never was argued by him. And I think that that – I would have to give that some thought, but I think that your possible argument of how you construe Section 19K has not ever been accepted either in the Lester case nor in any of the cases that prove all of it, Modern Drought Forge and a number of others. So I can't really – the strict language of 19K payable at the time of the award. It's true that by the time the arbitrator's award was issued, they had finally paid all of the statutory amputation. They had not paid the medical bill. There were two unpaid medical bills that were still unpaid at the time of the award. That's correct. The petitioner's position to the court is not only did the respondent waive the argument that it's been making because at the time that they were making the argument before the commission, their position was, well, we don't have to start paying any statutory amputation benefits until the petitioner has reached maximum medical improvement. That was what they argued. So they've abandoned that. On appeal, they've abandoned that, and now they're making the argument that there was no clear guidance in the case law as to when the benefit should be paid. So you had the benefit of opposing counsel's argument as to why he's arguing Lester is somehow unclear and subject to interpretation. So in the course of your argument, can you address why you think Lester is definitively clear? Well, certainly. First of all, let me just say that on the facts of this particular case, the alleged lack of clarity of Lester is irrelevant because the petitioner was released to go back to work immediately. The accident happened on December 9, 2005. The surgeon, Dr. Ashcroft at Indiana Hand Center in Indianapolis, gave him release to return to work with no use of the right hand immediately. So there was no lost time at that time. And I think that the question about what is unclear about Lester is, does the respondent have to start paying the statutory amputation benefits immediately, right after the date of injury, or are they entitled to wait until the petitioner has returned back to work? What relevance would returning to work be in an amputation case? I don't understand what the relevance is. Well, I would agree with you. I don't think it is relevant. MMI isn't relevant either. Pardon me? MMI isn't relevant either. Absolutely. It's not relevant. Not for the amputation. Right. It's gone, it's gone. I mean, you may still be treating the stump, but it's still amputated. That's right. And the MMI argument, the respondent had no statutory or case law or any authorities to support that argument, which the commission pointed out in its decision as one of the reasons that they found that the respondent acted unreasonably. You're just covering both bases. In other words, you're saying, all right, so even if it's not the date of the accident, which we seem to be clearly talking about an amputation, you're saying if I go along with or I answer opposing counsel's argument about it should be delayed until he returns to work, you're saying it already happened here. So his alternative argument, you're saying, has already been answered. That's right, because the petitioner didn't lose any time from work. They sent him back to work immediately. Subsequently, he did lose a week in January of 06, and he also lost about a week and a half in July of 06 when he had some additional surgery. But they did send him right back to work. So he has an accident. They sent him back to work. You're saying at the very least then it should have been paid when he returns to work. That's right. And it wasn't done then. No, it wasn't. And as far as the issue of did the petitioner have to retain counsel in order to get those benefits, if you will look at Petitioner's Exhibit No. 1, which is the penalty petition, and it contains several faxes that I sent to the claims adjuster on that point and her response that in response to my request or demand to her, then she finally did issue a check dated February 28, 2006, to pay the statutory amputation benefits. I think it was 12 weeks or so up to date. So I think for purposes of this case, it doesn't make any difference. But I think the argument that my opponent is making that the Lester case is unclear is simply because the math doesn't appear to exactly work out as to why the, I mean, this court affirmed the commission or basically affirmed the commission, and the commission had awarded a penalty based on a number of weeks, which doesn't quite mesh either, at least as far as you can tell from looking at Lester, either with the date of accident or the date that the injured worker went back to work. So that you could argue is some lack of clarity. Did anyone contest the computation in Lester? They contested whether it was over, but did anyone ever contest the computation in Lester, how they computed the penalty? Not that I can tell, other than the fact that the commission reduced the amount of the penalty that the arbitrator had awarded. I mean, in the first meeting, if no one raises the computation issue, then our job is to determine whether penalties are old at all. And if they're old, you just affirm the commission as to whatever they awarded, if no one complained about how they computed it. I would agree with that. In Lester, the respondent's argument was, well, there was some kind of settlement negotiations going on, so that justifies us delaying and paying this, but there was nothing that I could see in reading the Lester case that had anything to do with the question of whether the actual number of weeks that they assessed the penalty on was accurate or not. And I think Justice McCullough was the only member of this court and was also a member of the court at the time of Lester. And also, as far as the medical bills, again, it's a manifest way issue. The respondent clearly did not pay the medical bills, the two bills that were not paid that they assessed penalties on, which were a bill from the emergency room physicians from the date of injury, December 9th, 2005, for $735. And also there was a $47 bill from the petitioner's family doctor on June 30th of 2006. The commission felt that there was an unreasonable delay there, and they assessed the penalty, and I don't think that there's any basis to say that the doctor's result in that case was clearly apparent. Also, the respondent, I think, weighed that issue also, because first they claimed that it wasn't in evidence, the bills weren't in evidence. Well, the bills clearly were in evidence, Petitioners Exhibits 2 and 4, and the respondent tried to claim them. Now they're claiming, well, there's some confusion because there were some other bills listed by the collection agency and the commission used those bills to assess the penalties, and that's clearly not the case either. So I would respectfully request that the court affirm. I also had made an argument about possible attorney's fees under Supreme Court Rule Section 375B, and I made that argument in my brief. Thank you. Mr. O'Donnell, please. Counsel, can you answer the burning question? You made a strong argument that you've got the date of injury. Yes, sir. Initially there was the, I think, plausible argument about the MMI, at least the argument's plausible, but then he answers and says, well, what's the difference? Now he's back to work. So why would you wait until beyond the day he returns to work? Because that's not MMI. He's still actively treating at that time. A release to return to work on a light-duty basis does not mean he's at MMI. MMI means that's it. He's not entitled to temporary disability benefits anymore. His condition has reached a state of permanency. And you can say, well, obviously we know the condition reached a state of permanency with regard to the fin card. But his condition with regard to the hand potentially could have gotten worse. The fact of the matter is, and again I'm going to point you to the liar, if you read the arbitrator's decision, which was adopted by the commission, it says, Petitioner claims entitlement to penalties and attorney's fees for alleged late payment of permanent partial disability because the case involves an amputation. The evidence indicates, however, Petitioner's temporary disability benefits were paid in a timely manner, and Petitioner continued to follow up and treat for this condition with their last visit to Dr. Palmer and final release from treatment on or about July 22nd of 2002, which is about 14, 13 months after the date of accident. And it's about minus that, 14, 13 months minus two weeks after they returned to work on a light-duty basis. So the arbitrator in this case and the commission in this case found MMI was significant. And that's why it's significant. And that's why MMI still holds. Counsel says we've abandoned the argument of MMI. That's not true. This case clearly holds MMI is important. Does it come out and say MMI? No. It doesn't come out and say MMI. What relevance is MMI to an amputation? Because in this case, the arbitrator, it was one of the reasons that the arbitrator found that she did not award penalties in an amputation case. Well, yeah, but I understand that. But, okay, it was one of the things. But I'm asking you the question. Of what relevance is it to an amputation case? The finger is off whether it's an MMI or not. I cannot contest that. If the legislature had included that in the record, we wouldn't have the problem. It's not in the act. And you may say it's not relevant. But if it was that simple, then they could have included it in the act. They didn't. That leaves us with the interpretation. And that leaves us with this interpretation. This interpretation from the commission interpreting your decision, interpreting this court's decision, indicating in here implicitly MMI is important, MMI is a factor. Let me ask you this. You've got the burden to show you did not delay payment. You would agree with that. Yes, sir. What did you need to know before you could calculate the amount that was owed? Because... Well, in fact, what did you need to know? In my opinion, what do I need to know? Yeah. We needed to know what was owed or when was owed. What was owed? As soon as you get the medical report to determine where the amputation... Any average weekly wage. Yes, sir. Did you put on any evidence that was reasonable for you to wait 80? When did you have that information? And why couldn't you have paid it sooner than 80 days? Did you put on any evidence of those two factors when you acquired that knowledge? No, sir. Because the important factor was when they received the information that he was returned to work and had reached MMI and had completed treatment. That's the important... But you had this information long before 80 days. I would assume so, yes. But you chose not to pay it on that date. You waited the 80 days. That's correct. But in Lyerly, they waited 60 days, and the commission found that's not unreasonable. Do we know the date that you had the average weekly wage calculated and the injury? No, sir. No, but we do know the date that this gentleman, approximately the gentleman finished his care and treatment. That's February 15th. I want to understand something. As far as money goes, this appeal is over $1,552.14. Yes, sir. That's what this is all about. That's what it was about at the circuit court. That's what it's about here. Yes, sir. Kind of a small sum. Correct. What are you asking us for? You want us to write an opinion telling you when, if there's an amputation that arose out of it in the course of the employment, you must commence payment or pay penalties. Is that what you want? That seems to be what is required, because there are different interpretations based on the case law. Obviously, look at the arbitrator and look at the commission in this case. Lyerly, this is the one I'm holding up. They came to a different conclusion. So we need some direction, or we need to defer to the legislature for them to come up and say, there is a clear time for payment. Just briefly with regard to the medical bills, the only evidence in the record about the late payment is the actual exhibit, the petition for penalties itself. The petitioner never testified to the bills not being paid. The arbitrator indicated when she accepted the exhibit into the record, she was accepting it as a pleading. It's not evidence. Therefore, there's no evidence in the record about the late payment of the bills, about when the bills were paid. It's initially his burden to prove they were not paid, and they were not paid in a timely fashion. He didn't prove that. He didn't prove when they were. He didn't remember which bill was what. All right. Thank you, counsel. Thank you. Appreciate it. Court will take the matter under advisory for discussion.